IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Corinne Voeltz, | Civil Action No. 2:16-cv-2971-RMG |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| Bridge Charleston Investments E, LLC, *et al.*, | |
| Defendants. | |
| Bridge Charleston Investments E, LLC, *et al.*, | |
| Third-Party Plaintiffs, | |
| v. | |
| Waupaca Elevator Company, Inc., *et al.*, | |
| Third-Party Defendants. | |

This matter is before the Court on Defendant Elevator Services of Charleston, Inc.'s ("ESC") motion for summary judgment (Dkt. No. 148). For the reasons set forth below, the Court grants in part and denies in part Defendant ESC's motion.

I. **Background**

On April 4, 2015, Plaintiff Corinne Voeltz rented a condominium at 113 East Arctic Avenue, Unit C in Folly Beach, South Carolina (the "property"). (Dkt. No. 148-2 at 8 – 9.) On April 4, 2015, Plaintiff was on the first floor (one floor up from the ground floor) of the property and opened an access door to the elevator. (*Id.* at 22 – 23, 34.) Plaintiff then stepped through the door and fell down the elevator shaft because the elevator was not at the floor. (*Id.*) The elevator was manufactured by Defendant Waupaca Elevator Company, Inc. and was purchased and

installed in 2008 and 2009 by Defendant Colson Electric & Elevators, Inc. ("Colson"). (Dkt. Nos. 121-5; 121-6 at 3.) At the time, Defendant Easterlin was the general contractor. (Dkt. No. 121-3 at 3 – 4.) Defendant JEM Development, LLC was the owner and developer of the property. (Dkt. No. 121-3 at 5; 121-8.) The property was later sold and, at the time of the incident, the property was owned by Defendant Bridge Charleston Investments E, LLC ("Bridge Charleston") and managed by Defendant Luxury Simplified Retreats ("Luxury Simplified"). (Dkt. Nos. 94-1 at 7; 121-8; 121-9 at 3 – 4.)

Prior Plaintiff's fall, ESC serviced the elevator one time during a multi-day repair from May 8, 2014, to May 13, 2014. (Dkt. No. 148-12 at 211 148-13 at 17.) ESC was called by Folly's Best Rentals, the prior managers of the property, because the elevator was not working, meaning there was no movement of the elevator car. (Dkt. No. 148-12 at 30.) The repair work was performed by S. Anderson Chestnut, the owner of ESC, with the help of an employee. (*Id.* at 12; Dkt. No. 148-13 at 3.) During the service call, ESC replaced the ground floor electro-mechanic interlock ("EMI"), a device that makes sure that the door stays locked when the elevator is operating, installed a new wire harness and installed a new tape reader, a device which ensured that the elevator knew which floor it was on. (Dkt. No. 148-13 at 4 – 14.) After repairing the components, ESC checked to make sure that the elevator was running properly to each floor, that the "doors worked properly" and that the "safety circuit" was intact. (*Id.* at 16.) It is undisputed that after ESC serviced the elevator in May 2014, Defendant Coastal Elevators & Lifts, LLC, performed service on the elevator twice, once on July 28, 2014, and again on October 30, 2014. (Dkt. No. 148-11 at 13 – 15.) The service performed by Coastal included repairs to the elevator's ground floor EMI, and repairs on the first floor EMI because the door was able to open even when the elevator was not present on the first floor. (Dkt. No. 148-7 at 2; 148-11 at 15)

Plaintiff brought claims against Defendant Coastal for negligence, strict liability and breach of warranty. (Dkt. No. 33.) Defendants Bridge Charleston Investments and Luxury Simplified additionally brought a cross-claim against ESC for negligence. (Dkt. No. 41.) ESC moves for summary judgment on all claims. (Dkt. No. 148.) Plaintiff Voeltz and Defendants Bridge Charleston and Luxury Simplified oppose the motion. (Dkt. Nos. 172, 173.)

## II. **Legal Standard**

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to

find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### III. Discussion

To make out an action for negligence, a plaintiff must show that "(1) defendant owes a duty of care to the plaintiff, (2) defendant breached the duty by a negligent act or omission, (3) defendant's breach was the actual and proximate cause of the plaintiff's injury, and (4) plaintiff suffered an injury or damages." *Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 387 (1999). ESC argues extensively that as it was only hired to return the elevator to operating condition, it therefore did not have a duty to repair the issues with the first floor EMI. (Dkt. No. 148-1 at 24.) However, it is well settled that if one enters into a service contract, the party has a duty to perform that service reasonably. As the Supreme Court of South Carolina recognized, "[i]f one has entered into the performance of a contract and omits to do some act which it is his duty to do, such may constitute an act of misfeasance or improper performance." *Edward's of Byrnes Downs v. Charleston Sheet Metal Co.*, 253 S.C. 537, 542, 172 S.E.2d 120, 122 (1970). The Court went on to explain that "if he does enter upon the service, negligent performance may result from omitting to do what ought to be done as well as performing his duties in an improper manner." *Id. citing Williams v. Wise*, 255 Ala. 322, 51 So. 2d 1 (1951). Furthermore, as is well settled, where "an act is voluntarily undertaken, the actor assumes a duty to use due care." *Byerly v. Connor*, 307 S.C. 441, 445, 415 S.E.2d 796, 799 (1992).

The duty here arose from the service contract itself. As described by Chestnut, ESC was not contacted merely to repair the ground floor EMI and the tape reader, but instead were hired to insure that the elevator in general began operating again. (Dkt. No. 148-12 at 30.) Therefore, while ESC's duty did not extend to maintaining the elevator, the duty did include ensuring that the elevator was operating properly at the time of repairs. Further, ESC's owner also described

checking that each door worked properly on each floor as part of the repairs, and therefore ESC also undertook a duty to ensure that the doors were operating properly. (Dkt. No. 148-13 at 16, 30.) This duty covers not only the owner of the property but also to the plaintiff as a foreseeable third party. *See Edward's of Byrnes Downs v. Charleston Sheet Metal Co.*, 253 S.C. 537, 542, 172 S.E.2d 120, 122 (1970) (finding duty from subcontractor to plaintiff, a third-party leaser since "[t]he liability of defendant to plaintiff exists independently of contract and rests upon the common law duty to exercise due care to avoid injury or damage to others.").

There is a dispute of material fact regarding whether ESC breached these duties and whether its breach caused Plaintiff's injuries. Regarding ESC's duty to exercise due care when it checked the first floor elevator door, neither party has introduced evidence regarding whether the EMI lock was broken at the time ESC checked the first floor door in May 2014. Furthermore, there is evidence, which ESC disputes, that another component of the EMI, the keeper, was improperly aligned at the time ESC checked the first elevator floor door in May 2014. (Dkt. No. 172-2 at 4.) Finally, regardless of the EMI on the first floor door, Plaintiff's expert John W. Koshak opined that the "tape reader" could "output incorrect information leading to the unlocking of the wrong landing" and therefore there is also a dispute in the record regarding whether the elevator tape reader, serviced by ESC, ultimately contributed to the elevator not being on the first floor when the Plaintiff fell on April 4, 2015. (Dkt. No. 148-16 at 16.) Therefore, there is a dispute regarding whether ESC breached its duty, and whether that breach caused Plaintiff's injuries.

ESC notes that Defendant Coastal serviced the elevator in October 2014 and argues that this constituted a superseding intervening cause. However, "[a] third party's intervening acts of negligence…do not break the causal chain if the acts are foreseeable." *Small v. Pioneer Mach., Inc.*, 316 S.C. 479, 491 (Ct. App. 1994). Furthermore, the issue of superseding intervening cause

is normally a question of fact for a jury to determine. *See Id.* at 615. ("The defenses of contributory negligence and assumption of risk ordinarily present questions of fact for the jury and only rarely become questions of law for the court to determine. The same thing may be said of the defense of intervening third-party negligence.") (citation omitted). To the extent ESC acted negligently in failing to repair the first floor EMI, it was foreseeable that another party would do so as well. Furthermore, the Parties did not present any evidence regarding Coastal servicing the tape reader in July or October 2014, and therefore regardless of any intervening cause regarding the first floor EMI, Plaintiff's negligence claim survives summary judgment.[1]

Finally, ESC alleges that the Plaintiff is "not asserting" claims for strict liability or breach of warranty against ESC. (Dkt. No. 148 at 11.) However, the Court cannot find any indication that those claims were dismissed, and instead the Complaint expressly lists those claims as against "All Defendants." (Dkt. No. 33 at 11 – 12.) ESC, as a company that services elevators, was hired here to provide a service rather than a product, and therefore cannot be liable for strict products liability. *See* S.C. Code Ann. § 15-73-10; *In re Breast Implant Prod. Liab. Litig.*, 331 S.C. 540, 546 (1998) (holding health care providers were not "sellers" as the breast implant procedure, though it included a breast implant, was primarily a "service and not a product."). Similarly, the express warranty, implied warranty of merchantability and implied warranty of fitness for a particular purpose, do not apply to "contracts which are purely for services" and therefore do not apply to ESC. *Id.* at 553. Further, as ESC did not sell the property, the warranty of habitability

---

[1] ESC's motion does not address Bridge Charleston and Luxury Simplified's causes of action for negligence or indemnity. (Dkt. No. 41.) For the same reasons as above, the cause of action for negligence survives summary judgment. The action for indemnity survives as well, as Bridge Charleston and Luxury Simplified asserted that ESC was liable for Plaintiff's damages, Bridge Charleston was not responsible for the liability, and Plaintiff suffered damages. *Id.*; *Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp.*, 336 S.C. 53, 63 (Ct. App. 1999).

does not apply to ESC. *See Kennedy v. Columbia Lumber & Mfg. Co.*, 299 S.C. 335, 344 (1989) ("the warranty of habitability arises or springs from the sale of the home."). However, the warranty of workmanlike service applies to one who "failed to perform its work in a careful, diligent and workmanlike manner." *Magnolia N. Prop. Owners' Ass'n, Inc. v. Heritage Communities, Inc.*, 397 S.C. 348, 369 (Ct. App. 2012). This extends not only to builders, but also to companies hired to perform repairs. *See Martin v. A. Celli Nonwovens Spa*, No. 7:14-CV-03508-GRA, 2014 WL 5488423, at *4 (D.S.C. Oct. 29, 2014) (noting warranty applied where "defendant was a dealership performing repairs on a truck, not a builder constructing a house.") *citing Hutson v. Cummins Carolinas, Inc.*, 280 S.C. 552 (Ct. App. 1984).[2] Therefore, for the same reasons discussed above regarding the tape reader and first floor EMI, the cause of action for the implied warranty of workmanlike service survives summary judgment.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Elevator Services of Charleston, Inc.'s Motion for Summary Judgment (Dkt. No. 148). Elevator Services of Charleston, Inc.'s Motion is **GRANTED** as to the cause of action for strict liability. Elevator Services of Charleston, Inc.'s Motion is **DENIED** as to all other claims.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

February 2̲2̲, 2019
Charleston, South Carolina

---

[2] This is distinct from claims for breach of warranty for workmanlike service alleged specifically against builders, where the South Carolina Supreme Court has indicated that the cause of action is limited to purchasers and subsequent purchasers. *See Smith v. Breedlove*, 377 S.C. 415, 422, 661 S.E.2d 67, 71 (2008) ("a *subsequent purchaser* may sue a professional builder on the implied warranty of workmanlike service....") (emphasis added).