IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| Corinne Voeltz, | ) | Civil Action No. 2:16-cv-2971-RMG |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER AND OPINION** |
| Bridge Charleston Investments E, LLC, *et al.*, | ) | |
| Defendants. | ) | |
| Bridge Charleston Investments E, LLC, *et al.*, | ) | |
| Third-Party Plaintiffs, | ) | |
| v. | ) | |
| Waupaca Elevator Company, Inc., *et al.*, | ) | |
| Third-Party Defendants. | ) | |

This matter is before the Court on three motions to exclude experts: Defendant Coastal Elevators & Lifts, LLC Motion in *Limine* to Exclude the Expert Testimony of John Koshak (Dkt. No. 136), Defendant Waupaca Elevator Company, Inc.'s Motion to Exclude certain testimony of John Koshak (Dkt. No. 155), and Defendant Easterlin Company's Motion in *Limine* to Exclude Certain Expert Testimony by Joseph Stabler (Dkt. No. 159). For the reasons set forth below, the Court grants in part and denies in part the motions.

I. <u>Background</u>

On April 4, 2015, Plaintiff Corinne Voeltz rented a condominium at 113 East Arctic Avenue, Unit C in Folly Beach, South Carolina (the "property"). (Dkt. No. 148-2 at 8 – 9.) That night, Plaintiff was on the first floor (one floor up from the ground floor) of the property and

-1-

opened an access door to the elevator. (*Id.* at 22 – 23, 34.) Plaintiff then stepped through the door and fell down the elevator shaft because the elevator was not at the floor. (*Id.*) Plaintiff filed suit against Defendants on August 30, 2016. (Dkt. No. 1.) The case is set for trial on April 22, 2019. (Dkt. No. 146.) The Parties have filed various motions in *limine* in preparation for trial, and the motions regarding expert testimony are addressed here. (Dkt. Nos. 136, 155, 159.)

## II. <u>Legal Standard</u>

Under Rules 104(a) and 702 of the Federal Rules of Evidence, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Thus, even if a witness is "qualified as an expert by knowledge, skill, experience, training or education," the trial court must ensure that (1) "the testimony is the product of reliable principles and methods," that (2) "the expert has reliably applied the principles and methods to the facts of the case," and (3) that the "testimony is based on sufficient facts or data." Fed. R. Evid. 702(b) – (d). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid," *Daubert*, 509 U.S. at 592 – 93, and whether the expert has "faithfully appl[ied] the methodology to facts," *Roche v. Lincoln Prop. Co.*, 175 F. App'x 597, 602 (4th Cir. 2006).

Factors to be considered include "whether a theory or technique…can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," the "known or potential rate of error," the "existence and maintenance of standards controlling the technique's operation," and whether the theory or technique has garnered "general acceptance." *Daubert*, 509 U.S. at 593 – 94. However, these factors are neither definitive nor exhaustive, *United States v. Fultz*, 591 F. App'x 226, 227 (4th Cir. 2015), *cert. denied*, 135 S. Ct. 2370 (2015), and "merely illustrate[] the types of factors that will bear on the inquiry." *United States v. Hassan*,

742 F.3d 104, 130 (4th Cir. 2014). This is especially true as the *Daubert* standard applies to non-scientific expert testimony as well. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

### III. Discussion

#### A. Defendant Coastal's Motion to Exclude John Koshak

Defendant Coastal Elevators & Lifts, LLC ("Coastal") moves to exclude the testimony of Plaintiff's expert, John Koshak, regarding Coastal's repair of the elevator system at issue and the applicable standard of care. (Dkt. No. 136 at 3.) Coastal does not contest Koshak's ability to opine on the presence of a design defect on an elevator. (*Id.* at 6.) However, Coastal argues that Koshak cannot opine on repairs of residential elevators since he lacks the requisite qualifications in residential elevators or for elevator repair and maintenance for this equipment, he does not have data supporting his analysis, and his opinions are impermissible legal opinions. (*Id.*) Plaintiff opposes the motion. (Dkt. No. 141.)

Coastal initially argues that Koshak is not qualified to provide expert testimony regarding residential elevator repair and maintenance. John Koshak has worked in the elevator industry since 1977. (Dkt. No. 136-2.) Koshak started as an electrician, and over his four decades in the industry served as an elevator adjuster, serviceman, consultant, vice president of technical support, a research engineer, elevator consultant and a director of codes and standards for Thyssenkrupp Elevator. (*Id.*) In general, Koshak's qualifications on elevator design and service are manifest.

Coastal instead focuses on Koshak's alleged lack of qualifications to opine on residential elevator repair, arguing that while Koshak has extensive commercial elevator experience, he has no qualifications regarding residential elevators or residential elevator maintenance. (Dkt. No. 136 at 7 – 11.) Coastal however ignores experience that Koshak has in residential elevators. Koshak, in his deposition, testified that while serving as an elevator adjuster and serviceperson for Amtech from 1991 to 1996 he would "occasionally" go to a home to fix a residential elevator.

-3-

(Dkt. No. 136-4 at 6.) Further, Koshak testified that he attended "many" meetings at the American Society of Mechanical Engineers ("ASME") regarding residential elevators and has "written extensively on residential issues." (*Id.* at 9.) He has also given presentations on the risks involved with residential elevators, such as "Hazards on Private Residence Elevator's." (Dkt. No. 136-2 at 6.) Koshak also is a Certified Elevator Inspector through the National Association of Elevator Safety Authorities since 2002. (*Id.* at 10.) Further, in addition to these more than sufficient residential elevator qualifications, Coastal is impermissibly disaggregating these qualifications from Koshak's demonstrated extensive qualification in the elevator field. Indeed, in addition to his work in the elevator industry since 1977, Koshak serves on the Standards Committee of the American Society of Mechanical Engineers, which approves the codes and standards applicable to commercial and residential elevators. (*Id.* at 9.)

Coastal's arguments regarding Koshak not having requisite experience in maintenance and repair is again misplaced. Koshak's work history demonstrates that from 1977 though 1996 he worked in various roles as an electrician, elevator adjuster, and serviceperson, all of which were involved with installing, providing maintenance or repairing elevators. (Dkt. No. 136-2 at 2 – 3.) Further, again, as above, Koshak testified that at least some of this work involved limited maintenance on residential elevators. (Dkt. No. 136-4 at 6.) Finally, Coastal argues that Koshak does not have relevant experience and has never testified regarding a Waupaca elevator or EMI-3. However, again, Koshak testified that he has at least some litigation experience regarding either the same or a similar locking mechanism. (Dkt. No. 136-4 at 11.) Further, Koshak has extensive experience in elevator safety devices and codes, which are applicable here. (Dkt. No. 136-2.)

Koshak's opinions here are clearly based on knowledge, skill, experience, training and education, as required by Rule 702 of the Federal Rules of Evidence. Coastal relies extensively

on *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378 (D. Md. 2001), but *Shreve* recognized that "the fit between an expert's specialized knowledge and experience and the issues before the court need not be exact," and instead the expert's opinion is helpful to the trier of fact "only to the extent the expert draws on some special skill, knowledge or experience to formulate that opinion; the opinion must be an expert opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert." *Id.* at 392 – 393 (citations omitted). Here, Koshak clearly meets this standard, as his extensive specialized knowledge and experience is in elevators, including experience in residential elevators and safety codes applicable to residential elevators, and that specialized skill, knowledge and experience informs his opinions on Coastal's repairs and Waupaca's EMI-3 lock.[1] Koshak is therefore qualified to opine on residential elevators, Waupaca elevators, and the maintenance and repair of residential elevators. To the extent Coastal believes Koshak's level of experience with residential elevators is relevant, they can pursue that issue through cross-examination.

Coastal next argues that Koshak's opinions regarding Coastal's deviation from the standard of care are unreliable as Koshak relies on an incorrect safety code. (Dkt. No. 136 at 12.) Coastal argues that Koshak improperly relies on the ASME A17.1 as providing the applicable industry safety requirements for the elevator at issue here. (*Id.* at 13.) Specifically, Koshak in both his report and testimony opined that residential elevators generally are required to follow Part 2 of ASME A17.1, which is applicable to commercial elevators. (Dkt. No. 13603 at 2; 136-4 at 13.) Koshak does acknowledge that there are "changes that are not appropriate" for residential elevators. (*Id.*) Coastal argues that applying this standard leads to unreliable opinions as ASME

---

[1] Coastal attempts to analogize this case to *Shreve*, where the court excluded a mechanical engineer who had no experience with outdoor power equipment. *Id.* at 393. Koshak's extensive experience with elevators, the equipment at issue in this case, renders *Shreve*'s ultimate holding inapplicable.

A17.1 only applies to commercial, and not residential, elevators, as demonstrated by South Carolina's exclusion of certain residential elevators (namely those for a "single private dwelling residence") from the coverage of the South Carolina Elevator Code.[2] *See* S.C. Code Ann. §§ 41-16-30; 41-16-40; S.C. Code Ann. Regs. 71-5100.

Coastal's arguments are undercut by the fact that Coastal's own elevator expert, Jon B. Halpern, similarly applies ASME A17.1 as the "Safety Code for Elevators and Escalators" in providing his opinion and opines that the Waupaca elevator was "manufactured to meet the ASME A17.1 – 2004 Safety Code for Elevators and Escalators." (Dkt. No. 141-2 at 2 – 3, 5.) Therefore, Koshak's opinions based on ASME A17.1 are reliable and relevant. Further, regardless of statutory requirements, the existence and requirements of industry standards, including the elevator industry, is an appropriate topic for expert testimony, especially in cases involving negligence claims. *See Elledge v. Richland/Lexington Sch. Dist. Five*, 352 S.C. 179, 188, 573 S.E.2d 789, 794 (2002) ("Evidence of objective safety standards is generally offered 'in connection with expert testimony which identifies it as illustrative evidence of safety practices or rules generally prevailing in the industry, *and as such it provides support for the opinion of the expert concerning the proper standard of care.*'") (emphasis in original) (citations omitted); *Perry v. Otis Elevator Co.*, 21 F.3d 423 (4th Cir. 1994) ("Central Realty put on evidence through its expert witness that Otis was required by industry standards not only to advise Central Realty of the need to perform the one year/five year testing, but also of the consequences of failing to perform the tests."). Therefore, based on his qualifications, Koshak can opine on the appropriate industry standards for the elevator at issue here.

---

[2] The South Carolina Elevator Code applies ASME A17.1. *See* S.C. Code Ann. § 41-16-40; S.C. Code Ann. Regs. 71-5100.

The Court's determination of reliability is further supported by the fact that multiple experts in this case, including Halpern for Defendant Coastal, Roger E. Davis for Defendant Bridge Charleston Investments, LLC, and Joseph Stabler for Defendant Waupaca each relied on ASME A17.1. (Dkt. Nos. 141-2; 141-4; 141-5.) Therefore, applying ASME A17.1 to Defendant Coastal's actions is a reliable principle and method as confirmed by its general acceptance by the experts in this case. Again, to the extent Coastal believes distinctions regarding residential elevators are relevant, they can pursue that issue through cross-examination.

Finally, Defendant Coastal seeks to preclude Koshak from offering an alleged legal opinion that ASME A17.1 applies to the elevator here under South Carolina law. Under the South Carolina Elevator Code, regulations for facilities with elevators "must be based on the American National Standard Safety Code…A.17.1." S.C. Code Ann. § 41-16-40(2). The South Carolina Elevator Code, however, excludes from coverage "any single private dwelling residence…." S.C. Code Ann. § 41-16-30. Koshak opines both in his report and testimony that this law simply excludes residential elevators from "jurisdictional regulation and inspection" and is not otherwise "permission to ignore compliance with the ASME A17.1…" (Dkt. No. 136-3 at 2; 136-4 at 20.) Koshak further implies in his testimony that the manner of use of the elevator in this case places it under coverage of the South Carolina Elevator Code. (Dkt. No. 136-4 at 23.)

To begin with, the Court is skeptical that ASME A17.1 does not apply to the elevator here under South Carolina law. The Code only excludes a "single private dwelling residence…[,]" and an opinion by the South Carolina Public Service Commission indicates that "private residence," as used in the statute, refers to a "non-single family residence elevator[]." *In Re Rate Classification or Rate Structure for Tel. Lines*, No. 2005-15-C, 2005 WL 2860160 (Aug. 31, 2005). Further supporting this reading, the Corpus Juris Secundum, in a discussion of zoning regulations, has held

that rental for a fair market value may violate a 'single-family residence' requirements. *See* 101A C.J.S. *Zoning and Land Planning* § 120 ("The rental of a room in a private house may not constitute a violation of a restriction to 'single-family residence' where the family use is the principal use and rental use is merely incidental, but the existence of a landlord-tenant relationship and rental for a fair market value is an important factor negating single-family usage."). The use of the apartment here, which is not used as a private residence, and is instead one of four units in a structure rented for fair market value to visitors, likely does not fall under the plain text of the exclusion in S.C. Code Ann. § 41-16-30 as it is, at minimum, neither "private" nor a "residence."

Regardless, Koshak is not a lawyer and is not otherwise qualified to render an opinion on whether a specific South Carolina statute in the Elevator Code applies to the unique facts of this case. Therefore, Koshak will be precluded from offering testimony specifically that the South Carolina Elevator Code applies to the elevator at issue here and/or that the elevator at issue here violated the South Carolina Elevator Code. However, as noted above, Koshak is allowed to opine that ASME A17.1 provides the applicable industry standard and safety standard for the elevator and whether the elevator or Defendants violated those standards.

**B. Defendant Waupaca's Motion to Exclude John Koshak (Dkt. No. 155)**

Defendant Waupaca Elevator Company, Inc. ("Waupaca") moves to exclude any testimony regarding three specific opinions in John Koshak's report: O3.1, O3.2, and O3.5. (Dkt. No. 155.) Opinion O3.1 opines that the EMI-3 door lock has a "well-known failure mode of being energized at any time" which allows the "doors to be opened without the elevator present at the landing." (Dkt. No. 185-1 at 18.) Opinion O3.2 states that Waupaca failed in their design by failing to "comply with industry standard requirements for single failure protection" which allows "single failures" to unlock the "doors without the elevator present at the landing." (*Id.*) Opinion O3.5

states that the door locking device can be slightly misadjusted and has a "significant reduction in strength" because the keeper is "manufactured out of plastic." (*Id.*) Waupaca argues that each of these opinions are speculative as Koshak could not point to any evidence that any of those issues occurred with the elevator here. Plaintiff opposes the motion. (Dkt. No. 185.)

Waupaca does not argue that Koshak is generally unqualified or his opinions unreliable. Therefore, the Court will focus on the three opinions challenged by Waupaca. Regarding Opinion O3.1, Waupaca points to testimony where Koshak explained that the elevator has an defect where the "coil" could be "energize[d]" at "any time" which could cause prevent the pin from dropping, and thus allowing the door to open when the elevator car is away from the landing. (Dkt. Nos. 155 at 2; 185-8 at 2 – 3.) However, Koshak went on to explain that while this defect failed to comply with a provision of ASME A17.1, those specific "fail modes didn't exist" in this case. (*Id.* at 3.) When asked again, Koshak reiterated that "there's no evidence, direct evidence, that that was the fail mode," referring to the possibility that "the lock was energized or the pin was frozen." (*Id.*) As Koshak acknowledged that there is no evidence that the random energization of the coil caused the door to open here, any testimony identifying that defect as the cause of the elevator being absent here is speculative and unreliable.

However, O3.1 is limited only to the extent that Koshak cannot opine that the defects identified in O3.1 were the proximate cause of the elevator car's absence from the landing as the design defects may otherwise still be relevant. *See Harris v. Darcars of New Carrollton, Inc.*, No. GJH-16-3601, 2018 WL 1115143, at *4 (D. Md. Feb. 26, 2018) ("That [the expert] cannot pinpoint the exact part that was defective or whether the defect was attributed to the material itself or the workmanship associated with its installation does not render his opinion irrelevant."); *Watson v.*

-9-

*Sunbeam Corp.*, 816 F. Supp. 384, 387 (D. Md. 1993) (allowing testimony of "five design defects" and specifying "one of these defects…as the defect which most probably caused the fire.").

Waupaca presents no testimony or evidence that the defects identified in Opinion O3.2 did not exist in this case. Instead, the testimony identified by Waupaca relates solely to the coil being energized at any time, which relates to O3.1, and not O3.2 which focuses on "single failure protection." Further, regardless, the presence of other design defects may be relevant in this case, and the Court declines to exclude Opinion O3.2.[3] As with all of Koshak's opinions, Waupaca may cast doubt on the weight of these opinions through cross-examination or other evidence.

Finally, regarding Opinion O3.5, which faults Waupaca for using plastic in manufacturing the door locking device and opines that the use of plastic allows the device to be "slightly misadjusted," Koshak testified at his deposition that, based on his experience, the "type of plastic will bend and restore it's initial shape." (Dkt. No. 185-8 at 6–7.) Further, Waupaca's own expert, Joseph Stabler, acknowledged that there were "materials available to make that EMI-3 more robust to prevent bending and torqueing." (Dkt. No. 185-3 at 7.) However, Koshak acknowledged that, while it was possible the bending could leave no evidence, he had no evidence that the plastic on the keeper here was deformed. (Dkt. No. 185-8 at 6.) Therefore, as with Opinion O3.1, Koshak cannot opine that the defect in O3.5 was the proximate cause of the elevator car's absence from the landing, yet he still may testify about the defect itself as it may otherwise be relevant.

Therefore, Waupaca's motion is granted to the extent that Koshak is precluded from testifying that the defect identified in Opinion O3.1 caused Plaintiff's injuries here, but Waupaca's motion is otherwise denied.

---

[3] Though Waupaca presented no evidence to the contrary, as with all other opinions, Koshak may only opine as to proximate cause related to O3.2 to the extent it is based on sufficient facts or data.

## C. Defendant Easterlin's Motion to Exclude Joseph Stabler

Defendant Easterlin Company moves to exclude certain testimony offered by Waupaca's expert, Joseph Stabler.[4] (Dkt. No. 159.) Defendant Waupaca and Plaintiff oppose the motion. (Dkt. Nos. 176, 183.) Defendant Easterlin makes two primary arguments: First, Easterlin argues that Stabler's opinions regarding Easterlin (the general contractor) and improper installation were not properly disclosed within the applicable deadlines, and; Second, Easterlin argues that Stabler is not qualified to render opinions regarding the standard of care of a general contractor and his opinions on those topics are unreliable. (Dkt. No. 159-1.) The Court finds that Easterlin's opinions regarding improper installation were properly disclosed within the applicable deadlines, but that Stabler is not qualified to render an opinion regarding the standard of care of a general contractor.[5]

To begin with, there is no merit to Easterlin's arguments that Stabler did not timely disclose his opinion that the elevator was improperly installed. Stabler's report, dated September 28, 2018,[6] mentions a "pattern and practice of improper installation and repair," cites to Koshak's report for the "improper installation of the hoistway door keeper," reviews manufacturer's documents indicating that "three of the four hoistway doors was improperly installed," and in his conclusions states that the "EMI-3" was "subjected to improper installation, abuse and improper alteration." (Dkt. No. 159-3 at 11, 16—17, 21.) Therefore, Stabler timely disclosed his opinions regarding improper installation. It is true that Stabler's report did not opine on the standard of care of a general contractor, and the opinions regarding the applicable standard of care to Easterlin as a

---

[4] Easterlin's motion also joins in other motions in *limine* filed by other Defendants unrelated to expert testimony. (Dkt. No. 159 at 2.) Those motions are not addressed in this order.

[5] As explained below, Stabler may testify regarding the standard of care of elevator installers in general, which is an issue of fact regarding whether it applies to Easterlin. However, Stabler may not testify specifically regarding a standard of care for a general contractor.

[6] Defendants' expert reports were due on October 2, 2018. (Dkt. No. 112.)

general contractor were therefore not properly disclosed. However, as the Court finds that Stabler is not qualified to opine on the standard of care of a general contractor, this issue is moot.

Easterlin further argues that, if the Court deemed the testimony regarding improper installation admissible, the only remedy would be to permit Easterlin time to retain an expert to rebut the testimony and delay the trial. Easterlin argues this is particularly necessary as it did not attend Stabler's January 16, 2019, deposition in person because of a lack of notice of these opinions. (Dkt. Nos. 159-1 at 4; 159-2 at 2.) However, as noted above, Easterlin had notice of the opinions regarding installation in Stabler's September 2018 report, and the time to identify experts has long passed. Further, the Parties in this case extended discovery without Court order and, ultimately, the Court granted an extension to discovery through February 15, 2019. (Dkt. No. 145.) To the extent Easterlin believed it required additional deposition testimony regarding Stabler's opinions on general contractors, it was on notice of the need by January 16, 2019, approximately a month before discovery closed. Finally, the Court finds that Stabler is not qualified to opine on the standard of care of a general contractor, and therefore Easterlin is not harmed by late-disclosed opinions related to Stabler's opinions on general contractors.

Stabler is clearly qualified in the areas of elevator installation, testing, inspection, service and repair. Stabler has worked in the elevator industry since 1975 in various roles as an apprentice, manager, mechanic, adjuster, and ultimately executive at companies that specialized in elevator sales, construction, service, repair, testing, field engineering, and design. (Dkt. No. 159-4.) Stabler is therefore qualified to opine on the standard of care for an installer of an elevator. However, at times, Stabler's deposition testimony extended beyond the role of an elevator installer in general and specified the standard of care for a general contractor. (*See, e.g.*, Dkt. No. 159-2 at 8: "A: Yes, it also would be the general contractor's responsibility to ensure that it was inspected

thereafter, that way you could ensure proper compliance.") There is no indication that Stabler has any knowledge, skill, experience, training or education regarding general contractors, builders, or standards of care in construction in general. Instead, his extensive experience focuses almost exclusively on elevators. Therefore, while Stabler, as an individual who is qualified in elevator construction and service, may opine on the standard of care for an elevator installation, he is not qualified to offer opinions specifically regarding the standard of care of a general contractor.

Easterlin also argues that Stabler improperly relies on Koshak's report to opine that the keeper was initially improperly installed. However, an expert may rely on the work of other expert's in his or her field. *See, e.g., Knight v. Boehringer Ingelheim Pharm., Inc.*, 323 F. Supp. 3d 837, 843 (S.D.W. Va. 2018) ("For instance, an expert may rely upon the work of other individuals in his or her field, as well as the testimony of a lay witness."). *See also* Fed. R. Evid. 703. Further, Stabler largely relies on photographs from Koshak's report to opine that the keeper may have previously been installed in a separate location. (Dkt. No. 159-3 at 15.) This is not a recitation of Koshak's opinion, but, provided experts in his field use photographs, a reliable use of underlying facts and data.

Finally, Easterlin argues that Stabler's opinion that, based in part on his "common sense," an elevator should be inspected by a third-party after installation, is inadmissible. (Dkt. No. 203 at 6.) Again, Stabler is not qualified to testify specifically as to the standard of care of a general contractor. However, as Stabler has extensive experience in elevator construction, he is qualified to testify regarding common practices after installation of an elevator, including any inspections. *See SAS Inst., Inc. v. World Programming Ltd.*, 125 F. Supp. 3d 579, 589 (E.D.N.C. 2015), *aff'd*, 874 F.3d 370 (4th Cir. 2017) ("[W]here an expert relies on his experience and training and not a particular methodology to reach his conclusions, application of the [scientific analysis applied in]

Daubert ... is unwarranted.") *citing Freeman v. Case Corp.*, 118 F.3d 1011, 1016 n. 6 (4th Cir.1997). There is no indication that Stabler's extensive elevator experience does not sufficiently support this opinion.

## IV.  Conclusion

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Coastal Elevators & Lifts, LLC Motion in *Limine* to exclude expert John Koshak (Dkt. No. 136). The Motion is **GRANTED** to the extent that John Koshak is precluded from any legal opinion regarding the coverage of the South Carolina Elevator Code. The Motion is otherwise **DENIED**.

The Court **GRANTS IN PART** and **DENIES IN PART** Defendant Waupaca Elevator Company, Inc. Motion to Exclude Certain Testimony by John Koshak. (Dkt. No. 155.) The Motion is **GRANTED** to the extent that John Koshak is precluded from testifying that the defects identified in his Opinion O3.1 caused the elevator to not be present at the landing on April 4, 2015. The Motion is otherwise **DENIED**.

The Court **GRANTS IN PART** and **DENIES IN PART** Defendant Easterlin Company's Motion in *Limine* to Exclude Certain Testimony by Joseph Stabler. (Dkt. No. 159.) The Motion is **GRANTED** to the extent that Joseph Stabler is precluded from testifying regarding the standard of care for general contractors. Joseph Stabler is not precluded from testifying regarding standards of care for elevator installation in general. The Motion is otherwise **DENIED**.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

April 12, 2019
Charleston, South Carolina